UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ADAM ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> DEPARTMENT OF HOMELAND SECURITY OFFICE OF INSPECTOR GENERAL, <br><br> Defendant. | Case No. 20-cv-2021 (CRC) |

**MEMORANDUM OPINION**

The U.S. Department of Homeland Security ("DHS") sacked plaintiff Adam Robinson for poor performance of his job as a Program Analyst in its Office of Inspector General ("OIG"). Am. Compl. ¶¶ 5–6, ECF No. 20. Robinson challenged his firing before the Merit Systems Protection Board ("MSPB"), but an administrative law judge sided with the agency. Robinson now seeks review of the MSPB's decision. In this "mixed" case, he contends that his termination was contrary to the federal civil service standards for performance-based removals set forth in 5 U.S.C Chapter 43, and that it was both discriminatory and retaliatory under Title VII of the Civil Rights Act of 1964. Am. Compl. ¶ 18.

DHS has moved to dismiss Robinson's suit as untimely filed. See Motion to Dismiss at 6–7, ECF No. 24-3. Alternatively, it seeks summary judgment, arguing that the MSPB's decision was lawful and that Robinson cannot prove discrimination or retaliation. The Court agrees that Robinson missed the deadline to file his complaint. Because this filing deadline is jurisdictional and may not be enlarged, the Court lacks the power to review his claims and must, accordingly, dismiss the case.

I. **Background**

Mr. Robinson, who is African American, began working in DHS's Office of Inspector General in 2016. Opp'n at 1, ECF No. 28; Def's Ex. 1 at 2 ("MSPB Decision"). From December 2017 until his removal in 2019, Robinson served as a Program Analyst in the OIG's Office of Inspections and Evaluations. MSPB Decision at 2. He was assigned to a project which focused on investigating factors that made it difficult for the agency to remove undocumented immigrants after a final order of removal had been issued. Id. at 4; Am. Compl. ¶ 16. The team assigned to the project included Robinson, Senior Inspector Donna Ruth, Team Lead Inspector Lorraine Eide, and Chief Inspector Tatyana Martell. Opp'n at 1. Robinson reported directly to Eide and Martell, but technically his first-line supervisor was Supervisory Program Analyst Carrie Mellies. Meilles was not assigned to the same project as Robinson, so she received feedback on his performance from other managers, including Ms. Eide. MSPB Decision at 2, 4.

In March 2018, Eide began to express concerns to Mellies about the timeliness and accuracy of Robinson's work. MSPB Decision at 5–6. Mellies proceeded to hold a series of meetings with Robinson about his job performance. Id. at 6. In June 2018, Mellies issued Robinson an Opportunity to Demonstrate Acceptable Performance ("ODAP") memorandum. Am. Compl. ¶ 8. The OPAP indicated that Robinson's performance was "unacceptable" on three of seven critical job elements. MSPB Decision at 6. The ODAP gave Robinson 30 days to demonstrate acceptable performance. A week later, Robinson countered with an EEO complaint against Mellies and Eide alleging discrimination based on race and sex. Id. ¶ 9. At the end of the 30-day ODAP improvement period, Mellies concluded that Robinson had failed to demonstrate acceptable performance in the same three categories previously identified as needing improvement. MSPB Decision at 8. Accordingly, on August 8, 2018, Robinson was

issued a notice of proposed removal, and on February 1, 2019, he was formally removed from federal service. Am. Compl. ¶¶ 11, 12.

Robinson timely appealed his removal to the MSPB. Robinson claimed that the performance standards imposed in the ODAP were unduly rigid and unfair by comparison to similar employees. Id. ¶ 19. He also complained that the 30-day improvement period was too short, and that he was not provided the necessary training to meet the standards. Id. ¶ 20. Finally, Robinson contended that his removal was discriminatory because no white or female program analysts were held to the same high standards, and retaliatory because Mellies evaluated his work after she learned that she was named in his EEO complaint. Id. ¶¶ 10, 21–25.

An MSPB administrative law judge upheld Robinson's removal. She found substantial evidence to support the agency's conclusion that Robinson's performance during the ODAP period was deficient. MSPB Decision at 10–11, 22–24. She also found that 30 days was long enough to enable Robinson to demonstrate improved performance. Id. at 16. In support of these findings, the ALJ noted that one of Robinson's main responsibilities was to draft a "memorandum of record" or "MOR" after conducting an internal interview, and that OIG policy required MORs to be completed within three business days. Id. The ALJ found that when his ODAP was issued, Robinson had thirteen MORs that were partially drafted or outstanding, and during the ODAP improvement period eight were submitted late, two contained inaccuracies, and one was not submitted at all. Id. at 7, 18, 23. Finally, the ALJ found that Robinson had not established his claims of discrimination or retaliation by a preponderance of the evidence. Id. at 26–27. The MSPB Decision became final on May 20, 2020. Id. at 36.

Robinson, proceeding pro se at the time, filed suit in this Court on June 20, 2020. (More on that date later.) He renews his arguments before the MSPB that his removal ran afoul of federal civil service protections and was both discriminatory and retaliatory under Title VII.

## II. Analysis

DHS moves to dismiss Robinson's suit under Rule 12(b)(1) on the grounds that he did not file his complaint before the applicable deadline and, as a result, the Court lacks subject matter jurisdiction. Mot. at 6. Robinson, now represented by counsel, opposes dismissal, claiming that the complaint was timely. Because the Court agrees with the government, it will not reach the other grounds advanced for dismissal and summary judgment.

Under 5 U.S.C. § 7703(b)(2), a plaintiff seeking judicial review of a MSPB final decision must file his civil action no later than 30 calendar days after the MSPB decision becomes final. This deadline is jurisdictional and therefore may not be enlarged. King v. Dole, 782 F.2d 274, 275–76 (D.C. Cir. 1986); see Brookens v. Acosta, 297 F. Supp. 3d 40, 45 (D.D.C. 2018), aff'd sub nom. Brookens v. Dep't of Lab., No. 18-5129, 2018 WL 5118489 (D.C. Cir. Sept. 19, 2018); Ahuruonye v. United States Dep't of Interior, 312 F. Supp. 3d 1, 22 (D.D.C. 2018) (same).

Because the MSPB decision became final on May 20, 2020, Robinson had until June 19, 2020 to file his complaint in this Court. Referencing the Court's official docket, the government points out that Robinson's complaint was not filed until June 20, 2020—one day after the deadline. Mot. at 7; see ECF No. 1 (showing the filing date June 20, 2020 for Robinson's initial complaint); see also Minute Order of 5/28/2021 (order correcting the docket and setting June 20, 2020 as the filing date in response to notification from the Clerk's office that the originally docketed filing date of July 24, 2020 was in error). Robinson does not contest that June 19, 2020 was the applicable deadline. Opp'n at 12. Nor does he dispute that the deadline is jurisdictional.

4

He instead contends that, contrary to the June 20 date indicated on the docket, the complaint was in fact delivered to the Clerk's office, and therefore filed, on June 17, 2020, two days before the deadline. Id. ("Plaintiff transmitted his action on June 15, 2020 to the Court via standard mail with a delivery date of June 17, 2020.").

Robinson is correct that under Federal Rules of Civil Procedure, "[a] paper is filed by . . . delivering it to the clerk." Morrison v. Nielsen, 325 F. Supp. 3d 62, 66 (D.D.C. 2018) (citing Moore v. Agency for Int'l Dev., 994 F.2d 874, 876 (D.C. Cir. 1993)).[1] Yet, the only proof he offers for a July 17 delivery date is his own declaration stating that "the complaint itself was in fact *mailed* on June 15, 2020." Pl's Exhibit E (Declaration of Adam Robinson), ECF No. 28-1 (emphasis added). Mailing obviously is not the same thing as delivery or receipt. And Robinson has provided no evidence—in the form of tracking information, a delivery receipt, a date stamp, or any other record or attestation—indicating that the complaint was delivered to or received by the Clerk's office before June 20, 2020 as reflected on the docket.[2] The record before the Court thus shows that the earliest possible date of receipt by the Clerk's Office was June 20, 2020, one day after the deadline for Robinson to file had expired. Accordingly, under King v. Dole, the Court lacks jurisdiction to hear the case and must dismiss it.[3]

---

[1] The "prison mailbox rule," which deems filing to occur upon mailing, offers an exception to the general delivery rule governing deadlines. See Morrison, 325 F. Supp 3d at 66. But it is available only to pro se litigants who are incarcerated. Id.

[2] Robinson does point to the June 17, 2020 check for the filing fee that accompanied his complaint. Pl's Ex. E, ECF No. 28-1. However, the date of the check does not establish when the Clerk's office received it. If anything, a check dated two days after the purported mailing date (and only two days before the deadline) is consistent with a late delivery date of June 20.

[3] Following the filing of DHS's reply brief, Robinson's counsel filed a document entitled "Errata" accompanied by a "corrected" opposition brief (in which he includes arguments not presented in the first opposition), a Statement of Facts in Genuine Dispute (which he had neglected to file previously), and a second, expanded declaration from Mr. Robinson dated after

The Court notes that King has been subject to some criticism.  See Brookens, 297 F. Supp. 3d at 47–49 (collecting cases); see also Becton v. Pena, 946 F. Supp. 84, 86 (D.D.C. 1996) (noting courts outside of the D.C. Circuit have concluded, following the Supreme Court's decision in Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990), that § 7703(b)(2)'s 30-day time limit is not jurisdictional and can be equitably tolled).  But as Judge Kelly recently explained, unless and until the D.C. Circuit overrules King, this Court is bound to follow it.  Brookens, 297 F. Supp. 3d at 49.[4]

Even if the Court were free to disregard King, Robinson still would not clear the high bar for equitable tolling.  "Courts apply equitable tolling sparingly . . . and only in extraordinary and carefully circumscribed instances."  Miller v. Downtown Bid Servs. Corp., 281 F. Supp. 3d 15, 20 (D.D.C. 2017) (internal quotation marks and citations omitted). "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." Young v. Sec. & Exch. Comm'n, 956 F.3d 650, 655 (D.C. Cir. 2020).  "When a deadline is missed as a result of a 'garden variety claim of excusable neglect' or a 'simple miscalculation,' equitable tolling is not justified."  Menominee Indian Tribe of Wis. v. United States, 764 F.3d 51, 58 (D.C. Cir. 2014) (quoting Holland v. Florida, 560 U.S. 631, 651 (2010)).

.

---

the submission of DHS's reply.  The government fairly objects to these filings as improper.  The Court need not weigh in, however, because Robinson's new declaration offers no additional evidence to support his contention that the complaint was timely filed.

[4] The Court need not grapple with the continued validity of King in any case because Robinson did not question King's applicability in his opposition brief.  See Opp'n at 12–13.  Arguments not raised in opposition to a motion are waived.  Wannall v. Honeywell, Inc., 775 F.3d 425, 428 (D.C. Cir. 2014).

Again, Robinson says he mailed the complaint—via standard mail—on June 15, 2020, four days before the deadline. Even if that is so, he still assumed the risk that the pleading would not arrive on time. As the Supreme Court commented in applying another jurisdictional deadline, "a civil litigant who *chooses* to mail a notice of appeal assumes the risk of untimely delivery and filing." Houston v. Lack, 487 U.S. 266, 275 (1988) (emphasis in original). Robinson's pro se status at the time does not change the result. See United States v. Lawson, 608 F. Supp. 2d 58, 62 (D.D.C. 2009) ("[A] failure to meet the statutory deadline due to pro se representation is not a circumstance in which it is appropriate to toll the statute of limitations."); Oladokun v. Corr. Treatment Facility, 309 F.R.D. 94, 98 (D.D.C. 2015) (pro se litigants "are not excused from following procedural rules"); see also Miller, 281 F. Supp. 3d at 19 ("[C]ourts have strictly construed the [ninety]-day statute of limitations in Title VII cases, even where the plaintiff is proceeding pro se."). Nor does the Covid-19 pandemic provide Robinson an excuse. He attests that he contacted the Clerk's Office on June 15 and was informed "that filing deadlines were not being strictly enforced due to the Covid-19 pandemic." Pl's Ex. E (Declaration of Adam Robinson). But that purported call came on the same day he says he mailed the complaint—June 15—so he cannot claim that reliance on the Clerk's Office statement caused him to delay mailing. See Miller, 281 F. Supp. 3d at 21 (misunderstanding a filing deadline is not a basis for equitable tolling). And obviously the Clerk's Office lacks the authority to extend statutory deadlines.

On this record, then, the Court would find no basis for enlarging the deadline even if equitable tolling were available.

### III. Conclusion

For the foregoing reasons, the Court will grant Defendant's Motion to Dismiss and deny its Motion for Summary Judgment. A separate Order shall accompany this memorandum opinion.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date: <u>March 10, 2022</u>